*Curillier* for the plaintiff, *Duncan* for the defendant.

---

### LANUSSE vs. LANNA.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. This is an action instituted against the third possessor of property, on which the plaintiff states she has a lien. She avers that she brought a large estate to her late husband; that he failed; that she has only received a small portion of the amount due to her; and that the defendant is in possession of a house and lot sold by her husband during the marriage. She prays that the defendant may be condemned to pay the balance due her, or that in default thereof, the premises purchased by him be seized, and sold, to satisfy her claim.

The defendant pleads that he is the lawful owner of the house and lot mentioned in the petition, having purchased it from one Nic. Bertoly, who purchased it from the Planters' Bank, by whom it had been acquired from

Eastern Dist.
June 1827.

The mortgaged creditor is not obliged to bring his action against the property last alienated when that property is not subject to the lien. A wife who previously to the act of 1817, renounced her right on property sold, did not, by doing so, release her mortgage on that which was previously alienated. The wife has no mortgage on her husband's estate for the fruits of her paraphernal estate, nor on the estate of the executor of her father. In making the imputation of payment, it is not the debt first contracted,

Fleury Soubercase, who bought it from the husband of the petitioner.

LANUSSE
*vs.*
LANNA.

but that first
due, which is
considered to
be the most
ancient
A mortgage
cannot be en-
forced on the
im rovements
made by a
third posses-
sor.
The proper
mode of as
certaining
their value, is
to have them
estimated af-
ter the sale.

And that the lien claimed by the petitioner cannot affect this property, because nothing was due her for her paraphernal or dotal rights; because she did not enregister her mortgage according to law; because her right if it does exist, accrued since the sale from her husband to the person under whom the defendant claims; and lastly, that if the lien is recognized by the court, it cannot be enforced on the improvements made on the lot by the defendant, and those from whom he derives his title.

The answer concludes by citing Souber-case's heir in warranty.

She appeared, and in her answers repeated the same defence as that set up by the defendant; and added to it another, that the plaintiff was bound to exercise her right according to the order of the sales, "beginning with the latest and ascending in succession, from the last, to the oldest," that the value of the property sold subsequently to the sale made to the ancestor of the respondent, would be more than sufficient to satisfy the petitioner, had she not renounced her right on the property so aliena-

ted, and that by said renunciation, she has lost her recourse on the house and lot which she now seeks to have sold.

The district court was of opinion that it was indispensibly necessary for the plaintiff to first exercise her rights on the property last sold, and nonsuited her. From this judgment she has appealed,

The correctness of this judgment must therefore be examined before we can go into the merits. For if the plea on which it was rendered should be found sustainable, it will preclude any enquiry into the other matters at issue.

As a general rule, the judge was certainly correct in saying that where there there are several sales of property subject to a tacit mortgage, the creditor must enforce his lien on the object last sold. But that rule has no application to a case where the property last alienated is not subject to the lien. It is not merely the subsequent sale of the debtor, that confers the right on the first purchaser; but a sale made in such a manner, that the creditor can enforce his right on the thing sold. This necessarily results from the language used in the statute, and from the reason on which the rule was es-

Eastern Dist.
June, 1827.

LANUSSE
vs
LANNA.

tablished.   The law states that if the debtor has made several sales, and the creditors find themselves in the necessity of pursuing their payment against the property so sold, they must commence with that last disposed of.— This provision evidently contemplates several sales of immoveables, on which the creditor has a lien; for if he has none on the object last sold, there is nothing for him to bring his action against.   The defence is, in truth, one of discussion; and it depends for its validity on the fact of there being other property to be discussed; when the plea shews that the thing sold is not subject to the creditors' lien, there is nothing for the exception to rest on.

In the present case, the answer of the vendor cited in warranty, stated, that the plaintiff had renounced her mortgage on the property sold subsequently to that, which forms the subject of the present contest.   We think, therefore, the judge erred in directing her to bring her action against this property, before she could exercise her right on that in the defendants possession.

It is, however, contended that by doing so she has lost her mortgage on the house and lot mentioned in the petition.   But in this case

the court can see no foundation on which such

a position can be maintained. The act of 1817, it is true, directs, that where property is subject to a general or tacit mortgage, and it is sold to several persons, the mortgagee must bring his action against the last buyer, ascending in succession from the last to the oldest.— Now, admitting that the consequence contended for might follow, if the purchaser acquired after the act of 1817, on which it is not necessary to express an opinion. We are clear that it does not, where the sale was made previous to the passage of the law. At the time the defendant, or those under whom he claims bought, the property was *primarily*, not *subsidiarily*, subject to the mortgage of the wife, in case the husband sold subsequently to others; and the rights of the parties must be tested by the law at the time of the contract, not by the changes that were subsequently made in it.

The first ground of defence is, that nothing is due to the plaintiff by her husband's estate.— On this point a great deal of evidence was taken on the trial, and it has been the subject of much observation by the counsel in this court. The claim of the plaintiff may be divided into three distinct heads, and the enquiry into their

validity can be best conducted by considering them separately.

The first is that which is derived from moneys received by her husband from various sales of property belonging to her father's succession, and the whole amount on this head seems to have been paid away in discharging the debts due by the succession, excepting the sum of $2667.

The second arises from the proceeds of crops made on the paraphernal property of the plaintiff. This claim has been contested by the defendant, solely on the ground, that the moneys were received by the husband since the passage of the civil code, and that according to its provisions, he was only responsible for such portions of the fruits as remained unconsumed at the dissolution of the marriage.— *Civ. Code*, 334, *art.* 60.

Whether this argument be correct in relation to marriages contracted before the passage of the code, we need not stop to enquire, being of opinion, that by the law, as it stood previously, no right existed on the part of the wife to claim a mortgage on her husband's estate for the fruits of her paraphernal property, which he had received and consumed

It is true *Febrero,* in the passage cited and relied on by the counsel for plaintiff, does state, "that the husband has dominion over the paraphernal effects of his wife, and that the fruits belong to him, *if she deliver them to him with that intention,* and not otherwise.— *P.* 1, *cap.* 2, *S.* 1, *No.* 11.

But it does not follow, that if she *does not deliver them with that intention,* that he is responsible for them. as making a part of her property. On the contrary, the same writer expressly states in subsequent parts of his work, that the fruits of the paraphernal estate, whether delivered by the wife to the husband or not, enter into the community of acquests and gains, and belong to both in equal portions. In this assertion, he is clearly supported by the 3d law of the 4th title of the 10th book of the *Novissimo Recop. Febrero, p.* 2, *lib.* 1, *cap.* 3, *s.* 1, *No.* 57. *Ibid, cap.* 5, *s.* 5, *No.* 39.

Now in this case, there were no gains; if there were, the plaintiff has renounced the community in them; and if she had not, no claim arising from them would give a mortgage on her husband's estate.

She contends, however, that the proceeds of the crop came into the hands of her hus-

band, as testamentary executor of her father, and that he was acting in that capacity, and not in her right, when these fruits were made on the plantation. The facts, as they appear in evidence, do not support this position, for the book of accounts shews, that none of the crops after the year 1809, is carried to the credit of the estate of the late J. B. Macarty. That in that year, Lanusse and B. Macarty purchased out the other heir's right in the plantation, and after that time carried it on, on their joint account, and in their individual capacity.

But supposing the plaintiff not to have given his consent to the change which the executors seem to have made in the capacity in which they held the property; that the proceeds of the crops must be considered as having come into her husband's hands as testamentary executor; and that he never rendered any account of them in his life time: then the consequence is, that at his decease, he owed as testamentary executor; and for debts due in that character, it is not understood by the court that any mortgage existed on his estate.

The third and most important item in the account is that founded on the receipt by the husband of the price of the plantation, of

which the plaintiff was one-third owner, sold in the year 1818. But no part of that price appears to have come into his hands previous to the alienation to Souber ase in the year 1816, under whom the defendant claims, except a house and lot received in payment at $25,000.

For the two-thirds of this sum, viz: $16,666 66 cts. she had a mortgage on the property then owned by her husband, and our next enquiry is, does it still remain in force. The defendant insists it does not: 1st, because it has not been duly recorded: and 2d, because it has been paid.

The first objection we think unsupported. Her mortgage was a tacit one and could not be recorded. It does not appear that any act ever passed between the plaintiff and her husband in relation to her paraphernal effects, which it was necessary for her to record. The bill of sale by which she and her husband sold property to a third person, in which they had a joint interest and in which they acknowledged a receipt of part of the price, did not necessarily prove it, and the reading it would not have given notice to the world of the lien. The instrument indeed *was* recorded for the purpose

of assuring the mortgage of the vendors on the property sold, and in that light alone would it have been understood by those who read it.— The objection that the wife ought to have made it more explicit, proves too much, for by the same reasoning she would in all cases lose her tacit mortgage unless she made an explicit act, and had it recorded. But this is contrary to the meaning of the statute, the reason of the thing, and the settled jurisprudence of this court. 3 *n. s.* **239**, *ibid.* **229**, *rol.* 4, **479**.

The great question is, whether this debt, and the other for which the plaintiff had a lien, have been paid.

It appears that since the failure of the husband, she has received $29060, and this sum would certainly extinguish her claim on the property if nothing more had been due to her.

But subsequent to the alienation of the house and lot of which the defendant is the possessor other sums of money came into the hands of the husband amounting to $52,500.

The defendant, however contends, that the payment must be imputed to the most ancient debt, which was that due for the house and lot, and for the moneys received out of the father's succession.

If, in making the imputation of payment, the debt first contracted was to be considered as the most antient, this position would be correct, but it is not the period of contracting, but the time when the debt falls due, that is to be considered in ascertaining the antiquity of the demand. *Toullier, vol. 3, liv. 3. tit. 8, cap. 5, n.* 184.

Now in the case before us, all the debts fell due at the same time, viz. on the failure of Lanusse, consequently the imputation must be made on all.

There was owing to the plaintiff at the time of the failure, $2667, the balance of the amount received out of her father's succession: and $16,666, the price of the house received by Lanusse for which she had a mortgage on the property in the defendant's possession. These two sums make $19,333, which, added to the $52,500, paid afterwards, make $71,833. The payment by the syndics was, $29,060. This, imputed to the debts in proportion to their amount requires us to deduct $7821 from the mortgage claim, and consequently leaves a balance of $11,512, which the defendant must pay, or surrender the property in his possession that it may be sold.

Various other questions were raised on the argument at bar, and in the briefs since submitted to the court. They have been attentively considered, but it is deemed unnecessary to go into them in detail, and give the reasons why they cannot affect the opinion just expressed.

There is, however, one point which requires particular consideration. The defendant contends that the mortgage cannot be enforced on the improvements which he has made on the lot since it came into his possession.

The objection is founded on the 48th article of the old civil code, page 462, which states that the third possessor, "can only claim his expences and improvements to the amount of the increased value which is the result of the improvements made."

There can be no doubt of the soundness of this objection; nor that the improvements are to be considered in relation to the increased value they give the property at the time of sale, not to the price they or the lot may have cost. The only difficulty is how this value is to be ascertained?

As it is impossible to separate them, and sell each, we think the best mode is that after the sale, experts should be appointed, or any

Eastern Dist:
June. 1827

LANUSSE
vs.
LANNA.

other proof resorted to by which their respective value can be ascertained. And *that* once known, that the plaintiff and defendant should receive out of the proceeds their proportions; that is to say; the first, the value which the lot bore in relation to the product of the sale; and the second, the value of the improvements considered in that same way; the rents of the property, according to the proportion, which each hold in it, since the date of the notification of the seizure, to be added to the plaintiff's share, and deducted from the defendant's. *C. Code,462,art.49.*

The only question which remains is in relation to the action of warranty of the defendant against the heir of Soubercase. It is fully made out, and as there is no proof as to the present value of the property, judgment must be given against the latter for the price at which it was sold, viz. $8000.

It is therefore ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed, and proceeding to give such judgment as in our opinion ought to have been given in the court below, it is ordered, adjudged and decreed, that unless the defendant within three days from the noti-

fication of this judgment, pay to the plaintiff the sum of eleven thousand five hundred and twelve dollars, with costs, that the premises mentioned in the petition be seized and sold to satisfy the said sum, with costs in both courts. But it is further ordered that the sheriff, on receiving the proceeds of said sale, shall not pay them over to the plaintiff, but that he shall bring them into court, to be paid to the plaintiff and defendant, as the said court may direct; on proof being made to it, how much of the proceeds of said sale arises from the lot independant of the improvements placed in it by the defendant. And it is further ordered, adjudged and decreed, that the defendant do recover of the heir of Soubercase, the sum of $8000, with the costs occasioned by the action in warranty.

*Moreau & Cuvillier* for the plaintiff, *Seghers & Morphy* for the defendant.